Your argument in Garcia v. Cisneros Good morning, Your Honors. Gary Dukoff on behalf of Petitioner Ralph Garcia. I'd like to reserve five minutes for rebuttal, if I might, and I will keep my eyes on that to the extent I can. So it's a pretty safe bet, I think, that if I've been afforded an oral argument in an AEDPA case in this Court, that there's general agreement that things were pretty bad in the state court proceedings. And the $64,000 question, of course, is are they bad enough to warrant this Court's taking action and granting Mr. Garcia relief? And I would suggest to the Court, and I hope my briefing has at least gone a long way towards convincing the Court, that the thing that distinguishes the ineffective assistance of counsel in this case from the multitude of other IAC cases that seem to fall by the wayside is the pervasiveness of the conduct of trial counsel. It started early on in her representation of Mr. Garcia. There was inadequate investigation. There was, as the district court found, completely inadequate preparation for the trial. And I think it's fairly obvious that she was counting on Mr. Garcia pleading at the last second. She had done nothing to prepare for trial. And then when Mr. Garcia refused to, telling her he wasn't guilty, that's when she was caught flat-footed. And as the district court found, she decided to wing it at that point. She doesn't ---- But the district court ultimately held, though, that there was no prejudice because he could have been convicted on an aiding and abetting theory. You point out that the State court said, no, he couldn't have been. No reasonable jury would have convicted him. The jury seemed to ask a question about aiding and abetting. So if we're down to that question, and I know we'll have other questions on ineffective assistance, but why do you think the district court was incorrect on that? Well, first of all, I don't understand why that finding as to the theory adopted by the jury by the State appellate court is not presumed correct. You know, this whole idea underlying AEDPA is this court and the federal courts respect the State court's findings. There's nothing to distinguish a finding like that from any other finding it makes. And it found in no uncertain terms that the jury decided the case on the direct perpetrator theory. That's number one. Number two, don't forget, please, that the district court made its no prejudice finding on the aiding and abetting theory applying Ed Poddeferens. And my argument, and it's multi-strand, there's any number of ways this court can approach the issue, but the issue of prejudice should be decided by this court de novo. And so the district court did not do that. And one point that I didn't make in my briefs, but I sort of thought of it as I was preparing for today's oral argument, is the situation is analogous to a case where a State jury is given an erroneous instruction. And so the jury is presented with an invalid prosecution theory of conviction, but they're also presented with an alternative theory that is valid because the instructions were correct. And so the federal courts in reviewing that, they have to decide which route was more likely for the jury to have taken. And what they do in that situation is they look at the closing arguments. And when you look at, as I've pointed out in my briefs, when you look at the closing arguments in this case, the prosecutor spent 99.8 percent of his time arguing the direct perpetrator theory. And then at the very end of his rebuttal theory, he mentions the aider and abetter theory and then argues against it, saying, I'm not arguing this. Of course, he was the stabber, he was the direct perpetrator, but you could do this if you wanted to. But you can get back to your argument on... I'll just add, part of my argument was to address the aiding and abetting finding, because I know that's the one area where the district court ruled against me. What the district court had to do to reject my arguments about prejudice on aiding and abetting was to resort to complete speculation, to say, as the court did, oh, the jury could have rejected the testimony had it been presented of the lone, neutral eyewitness, because, you know, sometimes they get things wrong, things were happening, because it's complete speculation. As an objective matter, had the jury heard these facts, which they had no inkling of, that this lone, neutral eyewitness, Sonia Perez, viewed a videotape, and, you know, I know there's a dispute as to, you know, whether she withdrew her identification of a third party, put that aside, but we know she saw Ralph Garcia at numerous junctures of the tape she was shown in the police interrogation room, and not once did she say, did she even offer, oh, it could have been him, you know, let alone that that was the guy. So the jury had no idea that had happened. She twice identified someone else. The jury never learned that, whether she withdrew it or not, they never heard that, and then she provides a physical description that is absolutely clearly of someone not Mr. Garcia. I pointed out the discrepancies. The state likes to minimize them. They're enormous. The difference between 5'3", 5'10", wearing beige pants versus black shorts, wearing a t-shirt with a logo compared to a hooded sweatshirt that's blocking the third assailant's face, that's the difference, I would suggest, that clearly is the difference between conviction and some jurors having reasonable doubt as to whether Mr. Garcia was the third assailant, and that's on top of one fact that the jury did hear, which is that Ms. Perez saw the three attackers running away together, and we know, it's undisputed, that Mr. Garcia didn't run away with the other people running towards the girlfriend's car. So you add the stuff that the jury didn't hear to what they did hear. Could you address the testimony of Esparza? Esparza said that he saw, as I remember it, that he saw your client punching Flores, correct? Yes. And he never varied from that. Now, Flores was killed on that occasion. Punching somebody can be aiding and abetting a murder, can it not? Well, it can be, yes, Your Honor, if the jury finds that the puncher was acting with murderous intent. Did he know that somebody else had a knife and was stabbing him? It's so unfair to the defense, to Mr. Garcia, to frame it like that because of the way it was presented at trial. Even a competent lawyer would have spent the vast majority of his or her time trying to rebut the direct perpetrator theory because that's the theory that the case was tried on. So as to aiding and abetting, an answer to your question, Your Honor. Are you examining Esparza? Oh, absolutely. And the particulars are about the most important. Yes, Your Honor is correct that he testified that he saw Mr. Garcia making, quote-unquote, funny punches. He just thought they were funny punches. That was one of his stories until he changed it to he stabbed him, Mr. Garcia stabbed him. And not only that, but he confessed to me that he stabbed him. And he stands up from the witness stand very dramatically at the trial and demonstrates to the jury the stabbing motions that he had seen. So the jury, because of the trial counsel's ineffectiveness, had no idea, number one, that on multiple occasions the police asked Mr. Esparza during his interrogation to demonstrate how Mr. Garcia did his stabbing. He just ignored it and refused to do it, and they didn't press him. Number two, they asked him, which hand was he stabbing with? And Mr. Esparza says, the right. Oh, but it might have been the left, you know. So they didn't hear about that. And then the whole business about the confession, and the jury heard absolutely nothing about the irreconcilable inconsistent statements regarding the confession. And these are two of the most incriminating facts that a jury could hear. Number one, that a defendant had confessed. And number two, an eyewitness actually saw the stabbing motions. And the trial counsel had the opportunity to totally devastate the credibility of Mr. Esparza on the two most critical portions of his testimony, and that all got lost in the shuffle. And so there is one argument, I'm running out of time, but there's one argument that the state makes that I really didn't address in my reply brief, which, and they make this all the time because it succeeds with state court judges, which is that, well, look, counsel impeached Worthington and Esparza on other grounds, so what's the big deal that the jury didn't hear, you know, these totally exculpatory descriptions from Ms. Perez, and all the other stuff. And I just never understood that argument, and I think federal courts tend to decide that particular cumulative argument against it, because if they've already been impeached, it seems to me logical that it wouldn't take that much more, and Ninth Circuit cases have recognized this, it wouldn't take that much more to convince a juror to have a reasonable doubt as to the defendant's I would respond, my time is up, but I'll respond that the fact that they were impeached, and they, you know, they admitted to be liars, they lied about the murder itself, the fact that their credibility was already deeply in question just makes it that much more prejudicial, all of the things that the jury didn't hear. Thank you. Thank you, counsel. We'll hear from the state. May it please the court, Gregory Ott for Respondent. I'd like to talk about the standard review issue briefly, unless the court would like me to skip over that, but I just wanted to say that the district court was right in concluding that the California Supreme Court did not adopt the neglect, if you will, that it found in the Superior Court. I think right out of the gate, the look-through doesn't even apply here, because there is nothing, there is just silence by the Superior Court on these non-hearing claims, and so there's no relevant rationale for the California Supreme Court to adopt. But even if we go down the path of look-through, it just, it's not that easy. Could you, pardon me, Mr. Ott, could you repeat what you just said? I'm having difficulty following you. This California Supreme Court, what is your position on the California Supreme Court's ruling as to the trial court finding that there was no aiding and abetting? My position is the California Supreme Court's silent denial... You're talking about the non-hearing issues that the Superior Court did not address, is my understanding correctly? That's right. You're not talking about the prejudice finding? That's right. The non-hearing claims, the California Supreme Court's silent denial should be treated, as the district court did, like any other silent denial, meaning that, excuse me, under Harrington, we think about what grounds could have supported the ruling, and then determine whether those are reasonable. What I'm saying is that the look-through does not apply here for the non-hearing claims. And I think to adopt a reasoning, the California Supreme Court has to know what that reasoning was, and if we say that the Superior Court neglected or forgot several claims, I think it's insulting to the California Supreme Court to suggest that they then adopted that neglect in lieu of resolving these claims on the merits. Or that they were unresolved in state court, and we look at them to know? I mean, the counter-argument on that is that the state court didn't decide any of those claims at all. And I appreciate your argument of how we ought to look at the California Supreme Court, but I think that those are the two sides of the coin, as I see them. Well, we presume a silent denial is a merits denial. So if we say that the Superior Court didn't resolve them, there's nothing to look through to, and we have to assume that the California Supreme Court's silent denial was a merits denial, I believe. So moving on, unless the Court has any other questions on the standard of review, the district court was correct that even assuming error by counsel, the jury or the state court could have reasonably found that the jury convicted him as an aider and abetter, if not as a direct perpetrator. And here's why. Most of the deficiencies, as the district court pointed out, had to do with whether Garcia was a stabber, not whether he was present at all. For example, Esparza's statements that Garcia told him he had stabbed the victim, Worthington's statements that Garcia had said he had stabbed the victim, the cross-examination of Esparza with the pathologist's opinion, those all went to the stabbing, as did the alleged suggestedness of the Esparza interview. The argument is that, well, the suggestedness led Esparza to point to Garcia as the stabber. So the vast majority of the shortcomings alleged here have to do with identifying Garcia as the stabber, not whether he's present. And the evidence of him being present at the scene at the time is very strong. But then, if we could interrupt just a second, I mean, the difficulty is that the California Court of Appeals said there's no way the jury could have done that. So it's kind of a conundrum on edpedeference because, I mean, I'll quote, Frankly, given the evidence and arguments of counsel, we see no way that a reasonable jury would have found appellant guilty of first-degree murder on the theory that he aided and abetted the actual stabber. What do we do with that in the EDPA framework? Well, Your Honor, that's not a finding on this issue or any of these claims. It was a statement in the context of another claim. And the point really cuts against both parties. That is, in state court, on direct appeal, in which that comment was made, the argument by appellant was that there was an error in the aiding and abetting instructions and that the jury likely may have convicted on aiding and abetting because it asked questions. And the court rejected that, said there's no way that he could have been convicted on He absolutely would have been convicted on aiding and abetting. Your Honor, I don't agree with it. You recognize the inconsistencies. I do, Your Honor. My position is just that it's not a finding that bound the California Supreme Court on habeas corpus in the context of another claim. They had no cause to even look at that opinion on the non-hearing claims or any of the claims that weren't raised on direct review. Well, so basically what you're saying, as opposed to the non-hearing claims where you don't have any record at all, we have a finding or at least a statement here. You said ignore that. That's just dicta, basically. Well, it is dicta. It was raised, it was made, and I don't agree with it. It was made in the context of claims that aren't even at issue here. Right, but it's still a finding. I mean, at least it's an observation. You can argue that they were... I agree it's an observation. I don't believe it's a finding, and I don't believe it's a finding that is binding or was binding on the California Supreme Court when it reviewed unrelated issues, particularly because the issues, once this case went on to habeas, the aiding and abetting... Do you really want us to write an opinion saying that we could ignore what the state court says on these things if we think it's a dicta? I mean, in the broader context. I think it's relevant. I do appreciate the concern. I just don't think it's a binding... I don't think it's a finding in the sense of 2254 D.E. or D.2 or D.1. I don't think it's the same. It's an observation, an unfortunate observation right now for me, but I don't think it was something that bound the California Supreme Court in the context of an independent habeas on another issue. Let's turn to ineffective assistance. Obviously, part of the defense here, from your point of view, is that these were strategic decisions, but there has to be a reasonable strategy. Can you explain to me why you think it was a reasonable strategy not to cross-examine these witnesses about the major inconsistencies or not give an opening statement or prepare or investigate? Sure. It's hard to see a reasonable strategy there. Well, starting chronologically, there is no real claim about investigation. Counsel investigated. There's an investigation report in the record, for example, on Perez, and she had the transcripts of the interviews of Esparza, and there was transcripts of interviews of Perez, but also from counsel sent an investigator to talk to Perez. There's no real concrete claim about the failure to investigate, but my position has never really been that there was a strategic reason for not cross-examining some of these witnesses. Now, I do take the position that there was a strategic reason on the opening statement, but as far as Perez and Esparza go in Worthington, there was no hearing on that, so my position has always been, well, assuming she had no strategic reason for doing that, that those claims were harmless by themselves and viewed cumulatively for the reasons that I discussed. For example, with respect to Perez, counsel could have gone into more detail. There's no question, but counsel did bring out the relative discrepancies in height. She did not elicit the exact heights, but those were elicited elsewhere. She did, however, elicit the discrepancy in the relative heights, and she argued it, and she made clear, she elicited that Perez said, hey, he's wearing a black hooded sweatshirt. She elicited that, and she argued it extensively. She said, hey, to an argument that Garcia didn't shrink six inches and change his clothes, and so, you know, showing him the video, showing the durative video of what he's wearing. So, would it have been better for her to elicit the specific heights from Perez, or her height estimates? Yes, it would have been. My position is that, hey, the difference isn't between zero and 100. It's between 75 and 100, so to speak, and that goes to harmlessness, not her strategy. On the issue of the opening statement, I do believe she had a strategy, and I do believe a fair-minded jurist could find that that was reasonable and that she wasn't ineffective, and the reason is the strategy that she gave, which is completely, you know, a valid strategy and factually premised on corroborated evidence, meaning that she said Garcia had lied to her and given inconsistent stories, and then you see Garcia's interview with police, and you see, hey, he does lie. And that is a valid... But, you know, she could have deferred the opening and then commented on the evidence. I don't see much of a reason why you wouldn't make an opening. I agree, maybe you don't want to make an opening then, but deferring until the end of the state's case is a different question. I believe she did defer, but then waived it, but regardless, she didn't give it. But my position is that there could have been grounds to give, as you say, could have been grounds to give an opening statement and point out some of the inconsistencies that the jury would hear, but I don't think that her decision-making process under Strickland and then viewed through AEDPA has to eliminate every single possibility. And the other aspect in terms of harmlessness is the opening statement here would have been, if given, would have been very limited. I think we can all agree that she couldn't give a story as to what happened. She can't argue under California law, so she's limited to some of these inconsistent statements. And so I don't think that would have been consequential viewed by itself, the absence of such a statement, consequential viewed by itself or cumulatively with some of the other alleged errors. With regard to Esparza, again, like Perez, I don't have a proper strategy for her, so I'm not arguing that the strategy in missing some of these questions was a valid strategic position, but again, as with Perez and Worthington, she thoroughly impeached Esparza on several grounds. She broadly impeached him, saying he admitted he lied throughout the interview to police, minimized his own involvement. She listed that he took a plea deal. She listed his violent gang past, Garcia's drug and alcohol consumption on the night. She discredited Esparza's statement that Garcia had thrown a knife in the creek. She showed a still photo from the videos that showed Esparza, Raymond, and a third person in the black hoodie, again, trying to make that distinction that Garcia isn't the third and ask him to identify that person. He didn't, but it was made clear by another witness that that was LaChuga. The court also instructed that Esparza's testimony required supporting recording evidence because he was an accomplice, so again, would it have been best to elicit some of the specifics, for example, the discrepancy in the wording and location of Garcia's statement that he had stabbed the victim? It would have been better to do that, but to say that Esparza was not impeached and not remotely accurate, she thoroughly impeached him, and again, going back to dating and abetting, these impeachment points chiefly go to whether Garcia is the stabber. Now, if I could say one other thing about, going back to Sonia Perez, I wanted to highlight something. She was a different witness than the other two. She was a neutral witness. Nevertheless, she had reliability problems. In my brief at pages 31 and 32, I list the differences in her descriptions of the third assailant. I see I'm running out of time. Descriptions of the third assailant, one of the defenses here was that, hey, she's so true about everything, and so attacking her had to be a little more of a careful enterprise, attacking her internal consistencies, because they were there, but pointing them out also hurt the defense argument that, hey, she's correct about the black hooded sweatshirt and the height differences. I see I'm out of time. I'm happy to answer any. I think we have your argument at hand unless there are further questions. So thank you for your presentation. Thank you, Your Honor. So I disagree with the statements of the Deputy Attorney General that the vast majority of the deficiencies went to the direct perpetrator theory and that there was no claim by the petitioner about lack of investigation. It's funny, because I keep pointing this out and it keeps getting ignored by everybody. Part of the claim regarding Ms. Perez was counsel's failure to question her adequately about what took place in the police interrogation room and her viewing the videotape. So there is a claim about lack of investigation. And as far as the deficiencies, not giving an opening statement, giving a closing argument where you don't even mention reasonable doubt, let alone explain it or argue it. I mean, it's just mind-boggling to me. And the fact that that is not accepted as per se an effectiveness is something I strongly disagree with. But those deficiencies went. Oh, and then messing up. She provided no assistance of counsel at the jury instructions. She blew the aiding and abetting instructions. And so I argued that, I argued the error in the aiding and abetting. She blew the aiding and abetting instructions in what particular? There is an instruction that was given to the jury that says you cannot consider a defendant's intoxication on any other issue other than premeditation and deliberation, something like that. And then there's a separate jury instruction that says you can, you jurors can consider it, on aiding and abetting mens rea. And so here she was presenting, you know, evidence and questioning about his level of intoxication and doesn't ask for that instruction, which would have clarified the erroneous instruction that misled the jury. And the district court found that she was deficient in that respect, but it didn't matter because intoxication was not so important. But the point is, and this gets to the next point where the deputy AG is arguing that the state appellate court's finding is not a finding. I don't understand why it's not. I haven't heard a reasonable explanation for why it's not. And is it dicta? The court made that statement to dispatch my arguments on direct appeal about the problems in the aiding and abetting instructions. So they found, well, it doesn't matter if there's all these problems in those instructions because he was convicted on a direct perpetrator theory. So it wasn't unimportant, that finding. It's hard to understand, though, in the context. Is it a finding? Is it a conclusion? Is it just an observation, finding harmless error? It's tough to categorize it, I would say. All right. Well, you know, I, too, don't have a case on point. I looked for cases on point and couldn't find one. But I explain why it fits the definition of a finding by looking at the definitions in Blacks, and I think I cited a case on that. As far as the standard of review, I'll just quote Judge Thomas. I'll quote yourself to you from just last year in Jones v. Ryan. And it's a very simple principle that I would contend controls the standard of review here in its most important aspect. And the quote is this. Where the state court did not reach a particular issue, Section 2254D does not apply, and we review the issue de novo. So, you know, there's all sorts of paths, you know. Was there an adjudication on the merits by the California Supreme Court or not? Or if there was, do we look through it and then see that the superior court overlooked the non-hearing claims? It doesn't matter to me. It matters to the court in the Ninth Circuit's jurisprudence which way it goes. But to me, you know, the ultimate goal is to get de novo review because upon de novo review, I don't think there can be any question that ineffective assistance should lead to the grant of relief. And then one other point about this standard of review is, you know, this is what the Attorney General is doing throughout the state, is arguing that silent summary denials by the California Supreme Court means something that there's no way of telling that they mean. And so I presented the court with Murdaugh versus Ryan, and in that case, there was a petition presented to the highest state court that contained the overlooked claim, and this court still applied de novo review. And the deputy AG is arguing, well, I submitted an original petition to the Supreme Court that had both the hearing and non-hearing claims, so that's some evidence that there was an adjudication on the merits. But that's exactly what happened in Murdaugh, and it didn't make any bit of difference. So with that, unless there's any other questions. Yeah. Well, I think we have your argument. Okay. Thanks very much. Thank you both for your arguments this morning. Interesting case, and the case just argued will be submitted for discussion.
judges: THOMAS, GOULD, BEA